Sorry, Ms. Wheeler-Hann. Excuse me, Your Honor, it's hard to believe that Ms. Wheeler-Hann will be here in a minute. That was not very good timing. Nature calls. Excuse me. When did your co-counsel leave? During their side. During their side? You mean rebuttal? No. I think that's her coming through the door. Yes, sir. Okay, try again, Ms. Wheeler-Hann. Good morning, Your Honors, and may it please the Court. I'm Dawn Wheeler-Hann, City Appellant. The City of New Orleans enacted ordinances regulating the rental of private homes that deprive homeowners of rights long settled in this nation's tradition and history and also deprive workers and companies of their jobs. We ask that this Court vacate the District Court's opinion and enter judgment for the appellants as we pray for a conclusion to our reply brief. Today I'd like to talk about burdens of proof and evidence that is and is not in the record with respect to the Commerce Clause and due process and equal protection claims. But first, if I may, I would like to point out several record references to be sure I get to mention them. On the issue of housing availability, in the record, Your Honors, we'll find at ROA 3426 a study showing that New Orleans leads the nation in housing vacancy. At ROA 3428, there's another study, both of these done in 2023, showing that while there's a nationwide housing shortage, New Orleans actually has a surplus. Turning to the second point, contrary to the District Court's opinion, there have been no studies whatsoever done since this Court's last opinion in this case before the adoption of these ordinances. The City Planning Commission study in 2023 shows this. It's ROA 2927. We discuss it in our brief at pages 52 and 53. These ordinances are based on nothing except conversations among the City Planning Commission and the City Council. There were public hearings, but the Supreme Court's Cleveland decision discounts public hearings as a basis for zoning decisions. And the reason for that is simple, although it may not be obvious. The reason is that uninformed and misinformed people have the same right to speak up in public as people who actually know what they're talking about. And there's little way at a public hearing to tell one from the other. There have actually been occasions when paid actors show up at public hearings posing as citizens, which is a practice called astroturfing, which indicates that it happens often enough that there's a word for it. The third set of record references I'd like to point out to you is our maps and charting of the 2023 permit applications for STR permits. These appear at ROA 3181 to 3220. The maps are at 3206. And these permit applications were made pursuant to an ordinance providing that all STR applications, residential STR applications, would sunset, would expire in August of 2023. Also, our memorandum at 3335 to 3340 is important on this point. What you'll see there in those maps and charts is that there is no excess number of residential STRs, and there is no overconcentration in any neighborhood. What is the legal point that you're making with all of these documents and record excerpts? That the city has no legitimate interest in regulating residential STRs as they have. Turning to the Commerce Clause, I'll talk first about the residency requirement for residential STR operators, and then I'll talk about the city's total ban on corporate owners and operators of residential STRs. The District Court relied heavily on the Ninth Circuit's Rosenblatt decision. That was misplaced because the Rosenblatt opinion did not address STR operators at all. It only concerned owners of residential STRs. Operators have a different interest. They're interested in doing their jobs while located in New Orleans. Why don't you go to the core of your argument? You only have ten minutes. It's an interesting case and difficult. We'll, in due course, look at all the records, but for my ears, why don't you just hone in on the jugular of the District Court's error and so forth? The District Court erred in relying on the Rosenblatt case because it did not deal with operators. I understand. This case has been up here before. It's been back down. It's got all this history, et cetera, et cetera. You only got ten minutes. You don't want to spend ten minutes going through all of that. I suggest, at least for me, cut to the chase in terms of where the critical errors are related to the records. Okay. With respect to the residency requirement? Your argument is just . . . If you keep giving us a record record, we're going to look at the record. Okay, Your Honor. Look at some of it, but just connect it to the argument you're making in terms of demonstrating, because you led with saying you want us to vacate to trial court. You didn't say send it back, do this. You said vacate and render. That's a tough assignment, so just connect with how you're entitled to that, even assuming there's a problem, that's all. With respect to the residency requirement for residential STR operators, the district court mistakenly relied on the Rosenblatt decision out of the Ninth Circuit, which did not deal with operators at all. This court's earlier decision did not deal with operators at all. With respect to the total ban on corporate owners and operators of residential STRs, there's no such provision for commercial operators, STR operators, nor for any other lodging industry entity. There's no showing of any difference between individuals who are corporate owners and operators and individuals with respect to STR. There's a very good reason why people might want to become an LLC or incorporate if they're going to operate any part of their house as a, what do you call it, a short-term rental. A residential short-term rental. There is a good reason, Your Honor. A good reason. It's a cancellation from individual liability. That's exactly right, Your Honor. And the Supreme Court says the corporations have the same constitutional rights as individuals do. They have a right to do that. Counsel, do you believe that the district court opinion runs afoul of the Marfil case, New Braunfels case? I do, Your Honor. And our amicus brief addresses that. The district court made the extraordinary holding that it had no duty to read, to sift, it calls it sift through the record, essentially saying the district court could ignore record evidence in its findings. And we think that's contrary to this court's Simi v. Harris County, Texas case as well as Abbey v. Castile. With respect to our due process and equal protection claims, we've argued in this court against the district court's rational basis findings. But throughout this litigation, we've argued that the right to private property under Louisiana law is a fundamental under federal Louisiana law, is a fundamental right. It's long settled in the nation's history. The right to lease is part of a tripartite bundle forming property rights. And so we think that strict scrutiny should apply. The law should be narrowly tailored to serve a compelling government interest. We don't think the city has shown a compelling government interest, let alone a narrowly tailored ordinance. But even under rational basis review, the city is required to show that its ordinance is further a legitimate government interest as well as that it has one. The city has not done that. And under equal protection, the city is required to show that its different treatment of similarly situated persons is rational, and it hasn't done that. That's under McCaskill v. Galveston, which is cited in our brief. We provided evidence of irrationality of the city's ordinances. We provided contrary evidence to the district court's hypothesized finding of a rational basis or plausible reasons. The district court disregarded and discounted these. For the purposes of your dormant commerce clause challenge, does the code actually require that the operator reside permanently on the property? Yes, it does, Your Honor. It seems like an out-of-state institution. That is, you will find that requirement, pardon me, at city code article 26619b2, which you'll find at ROA 2850. It requires a matching address. There is also the declaration of appellant Garrett Majew at ROA 619, showing that he was denied a permit for a residential STR license for a guest house on the same lot as his home. So the answer to your question is yes, it does require that. So they have to actually permanently live there, not just be there on the days that the guests are there? That's correct, Your Honor. That is correct. Consider the actual circumstances that we're talking about. The city of New Orleans has prohibited residential short-term rentals in the French Quarter, saying that they wish to preserve neighborhood character. In a neighborhood where the bars are open 24-7, where a walk through the quarter will find burlesque dancers swinging their legs out of second-floor windows, and bar patrons will be carrying their hurricanes and big beers through the streets at all hours. It's difficult to understand how the city seeks to maintain the residential character of that neighborhood. Returning to the Commerce Clause, the district court said that the city's ordinances apply to both in-state and out-of-state corporations. This court, in its first decision in this case, rejected that argument, correctly relying on the Supreme Court's Carvine decision. The district court incorrectly relied on CTSV dynamics, and that reliance was incorrect because that case dealt solely with the state governing its own corporations, whereas these ordinances govern corporations organized in all states. I would like for you to vacate the district court's decision and rule that the city of New Orleans, since it has not made any showing of any legitimate purpose in regulating the small number that we show you in our brief of residential STRs, nor that there's any reason for an operator inside of a residential STR but not a commercial STR, I would like you to vacate the district court's decision and rule that the city of New Orleans may not regulate residential STRs based on the duration of the lease. Well, wasn't that decided in our first appeal? Not precisely that, Your Honor. Well, I think it's pretty darn close because the whole point of the first appeal is, well, the city could do this, the city could do that, the city can cap the number on a block, the city can increase fees, all that. I'm sorry, this just happens to my voice occasionally. The first decision implicitly assumes that short-term rental regulations are permissible. I think that the first decision dealt with owners and not operators. I think that the first decision... Well, the operators have no rights unless the owners of the property get a license, right? No, the operators must have a license as well. Right, okay, yeah, I'm confusing that, sorry. And the other thing is, in the first decision, while the court said, we addressed this in our brief, while the court said that the city could cap the number of residential STRs, it did not say it could cap them in an arbitrary and capricious way. The court did not say that. Well, you're saying you wanted no caps at all. Now you won't. I think that if the city shows there is a legitimate reason to cap them, I think... The other thing I'd like to point out, Your Honour, is that in the space since this litigation has begun, the court's prior decision relied on a 2018 study, which itself relied on anecdotal evidence from unnamed, unidentified witnesses that could be nothing more than the statement of a city council person. Well, if you're not . . . Well, let me just suggest this. If you're not . . . If several members of the court are not going to be sympathetic to the idea that there are no caps because Louisiana says permits on land use are, you know, a license, not a right, if we don't accept the broad argument, what are your most, let's list in order, your most important subsidiary challenges here? The challenge to an in-residence operator inside of a residential STR where no other lodging entity is required to do that. That would be a primary challenge. Okay. And that would be arbitrary and capricious or a violation of equal protection or what? I'm sorry, Joanna. I didn't hear the first part of your question. I'm sorry. I apologize that I'm on the Zoom. Would it be arbitrary and capricious or would it be a violation of equal protection or what would be the theory by which we would hold that in-residence requirement is wrong? Well, since there's no in-residence requirement for commercial STRs, I think it's an equal protection violation. This Court has case law saying that a violation of one constitutional right doesn't mean that another constitutional right can't be violated at the same time. I think it's a Commerce Clause violation to require an operator to reside inside of a residential STR all the time. I think that violates the Commerce Clause under this Court's first decision. The District Court, as I'm repeating myself, the city, I've already said that. Well, your red light's on anyway. Oh, sorry, sorry, sorry. Thank you, Your Honor. All right. Thank you. Ms. Hutton, I suggest that you go to the restroom earlier the next time. I didn't realize what floor it was on. I apologize to the Court. All right. This is my first trip to the Fifth Circuit. Sherry Hutton here on behalf of the City Attorney's Office for the City of New Orleans. And just to jump right in, it's the city's position. We base our position based on this Court's ruling, the August 22nd, 2022 ruling of the Fifth Circuit that gave guidance to the District Court on how to better guide the city on how to rewrite the ordinances so that they wouldn't violate Commerce Clause. And so the Higno plaintiffs argue that the Commerce Clause violations occur because they require an on-site operator. But that change in the ordinance was based on the guidance that came from the Fifth Circuit as alternative ways for them to do a better job of drafting. So they incorporated that into it. And so . . . Well, did the Court say that you ought to deny a license to someone who had a guest house on the theory that the operator didn't live in the guest house with the guests? Or is that a misinterpretation? I think that's, with all due respect, I think it's a slight misinterpretation because I think the guest house is on the property generally of another house. Usually, just based on my 20-something years in New Orleans, a guest house is sort of another structure on the same property, like a carriage house or a pool house or something like that. So I think the whole point of having someone on site, not a person that has to live there all the time, but a person who is present while the property is being occupied . . . It seems, frankly, it just seems ludicrous to me because people rent an Airbnb so they don't have to go to a hotel. And if they rent in a house, they're not expecting a bed and breakfast, which is different, which I'm sure is equally regulated by the city. They're expecting to have the premises. And yet New Orleans is saying that essentially the owner has to be, the operator, excuse me, has to be in the position of the bed and breakfast proprietor. Is that right? Well, I think when you take into account how properties generally are set up in New Orleans, really often you have a two-unit situation, a two-unit building where you have a double shotgun or a townhouse kind of situation where you have kind of a divided residence. I sit in on adjudication hearings on a regular basis every week and it's not unusual. I'm not sure that answers the question, though. It just seems like there's almost always an opportunity for there's someone to be on site. You're describing that New Orleans has the dual residency, the shotgun. I saw you kind of say the unique nature of the dwelling is what makes a difference. I don't think that's what you're saying, but I'm trying to understand what's your answer to Judge Jones' question. What's so special? I know New Orleans is special. I get that. Well, we're special. We are. What's so unique in terms of what's at issue here that there's some kind of unique police power, authority, or whatever buried within that just shoots past the owner of the property? Cut to the chase. What's the city's driving concern, interest? Is it safety? What is it? Our driving concern in regard to regulating short-term rentals is to not disturb the neighborhoods and the people. Not in regulating short-term. I mean the owner residency requirement. That seems to me the key friction point. Because what we end up with are people who aren't here, aren't around. A group of people come in to have a weekend. They occupy the property. There isn't anybody available to give them any guidance or answer any questions. Don't you require the operator to post regulations? Sure. In practice, I don't see that that . . . I mean I'm speaking from personal experience of sitting in hearings. I don't see that that goes all that well. I felt like that was why this court in its August 22, 2022 ruling . . . Aren't there maximum occupancy limits on the short-term rentals? They are. If people exceed those and the permitting department finds out about it, they're fined. Well . . . We have to constantly police it. I'm sure you do. But the whole point is we don't want loud parties. Again, in the French Quarter? I mean really. I would say though that these short-term rentals are not just in the French Quarter. Well, I'm sure they're not. They're all over town. They're in my neighborhood. Well, and you would call the police if someone was . . . I would probably walk over and knock on the door, but that's just me. Well, just fine. I hope you're packing heat when you do. In any case, but my point is still that. It's not clear to me why the operator has to be present on the property the entire time, and that makes it basically infeasible for a non-shotgun or duplex person to rent, doesn't it? Well, in the guidance that we got from the Fifth Circuit . . . Would you cite that? Would you give me a pen? Sure. I've got it right here. I mean, surely they could live within the area. I'm looking at page 9 of this court's ruling, Part B, Asterix 328, just down from there. It says the residence requirement might help the city achieve that goal, but there are other reasonable alternatives. Enforcement policies. The city could give STR owners the alternative of having an operator stay at the property during the night. This is on page 10. I don't have the Westlaw version of the opinion, so maybe . . . I'm sorry. Don't waste your time. I'll look at it again myself. Okay. Thank you. Sorry about that. I'll take your words. You've seen the commercial on TV where Nick Saban, the former Alabama head coach, is the owner of the Airbnb, and he's sitting there glowering at the people, and he says, check-in is at 3 o'clock, and they say it's 2.55 p.m., and then he reads all these rules to them, and he says, no fun, yada, yada, yada, and then he's in the pool when they're swimming and so forth. I exaggerate to get to a point. You don't exaggerate much. Right. So, I mean, you know, he's sitting there in the pool. He's sitting there when they're trying to be in the hot tub. Is that the kind of owner presence, Airbnb, that the city's shooting for? I think that the Airbnb does a great job of, you know, writing commercials for television. I'm using it to drive me into is that the kind of omnipresent, you know, owner being there that the city is moving for? You know, that kind of thing. Saban is glowering over it. He's making sure he has a set of rules and so on and so forth. So he's clearly not non-resident, and I'm trying to ask a serious question. Is that the aim of the city? You know, that kind of owner presence? If so, to the point that you were earlier at, I mean, what's the legal basis for that? Well, I would think that if the Airbnb, if the STR operator wants to have repeat business, they're going to have to, you know, make sure that they hire someone to be their operator to, you know, make sure that the residents have a good stay. That's going to be part of their job. That's a business judgment, how well it goes, et cetera. And I'm not asking you the business judgment. You know, it flops this way, you change. I'm just trying to ask, what is the city's legitimate business? Not how it wished it might be, but what is the legal basis, anchored in law, to require that the owner be there in this premises? That's all I'm asking. Not in the other cases, not in your papers. I'm asking you a question because I want to know the answer. Tell me, what is it? I would say that the best evidence of that would be our operator residency requirement. You know, exactly what it says. And what it says is... It's like, don't define a word with the word. I'm not trying to be complicated. Just look me in the eye and just tell me, what is the city's goal? What is its aim? Is it a police power type objective? You know, is it that? I'm not trying to be tricky. I just want to know. I read the papers. I read the old opinion. But y'all are here again. Okay. The other side says vacate and render. That's what she says. So I'm trying to understand, what is it that the city is driving? I mean, not how you wish it would be, but what is it that an owner on the premises is required to do that couldn't otherwise be achieved in other ways? Well, by having an operator on premises, we would hope, our goal is that there will be someone there keeping order and preventing things from spinning out of hand, which happens more often than is really acceptable. I could give a couple of good examples, but I won't, you know... You're giving me things that are easily speculative or can be handled. I can see how stuff can get out of control no matter what. I mean, stuff gets out of control in hotels, you know, when it's sent to people up there, any kind of thing. People don't follow the rules. Well, a hotel generally has security and a hotel detective that oversees. You know, things start going oddly. They have cameras. They're watching. You know, they move in and do something about it. Okay, shift gears, because you're clearly not going to respond to the question I asked. Go to the Dormant Commerce Clause argument that counsel argument is making.  Respond to her argument in the brief about the Dormant Commerce Clause. The City Code 26619 states that the operator has to be a person age 18 and above and hold a short-term operator permit. They're required to reside on the premises. I want you to read me what it says. I'm asking you as a lawyer to answer the question. What is your response legally to the constitutional claim being made that all of this is a Dormant Commerce Clause violation? Don't read to me what the agreement says. We don't think it violates the Dormant Commerce Clause because it doesn't require a residency. It just requires that an operator, an employee, somebody be present. Sort of like if you had a hotel and you have somebody at the front desk that's there to, like, answer questions or direct people or to take care of things. That kind of situation. I believe that's what they're trying to do, to prevent problems and to provide for our guests that are here in the city. To be more precise about it, this section of the code requires proof that the operator resides on the premises being operated on a short-term rental, including evidence of accorded ownership or current residential lease. In other words, this does not seem to cure the problem that out-of-state operators are not permitted. Well, it could also be a letter of permission from the owner of the property. That could also be... But you have to have things like bills sent to the property in your name. Yeah. Because sometimes people... There's the owner of the property and then there's a person that operates it, and those are two different people. I know, but the... Okay. Well, it seems to me that requiring the operator to get bills at the address makes it very difficult for an out-of-state individual to do this. We based the change in the law on the advice that we got from this court's ruling in 2022. Talk about that a little bit. You cited... I have the Westlaw version of the opinion, just happen to. And on page 10, where you've talked about this, this is just a list of options beyond enforcement that the court is just breezily talking about all these other things that they could do. The court does not say that these things, coupled with other things, would be constitutional or appropriate. The court is just listing a whole bunch of things that you could possibly do, but it doesn't talk about them in conjunction with the other things that you're doing or say, well, you could do this, but not if you also do this. It's not meant to be a get-out-of-jail-free card in any sort of way. The district court also relied on this advice from the Fifth Circuit in interpreting the changes in our ordinances. But it's not advice on how you can do it. It's just saying that you could do things, and so that's why this is wrong, what you did do. It's trying to show that there's so many other reasonable things that you could do, which is why what you did do was wrong. And it doesn't evaluate these things in conjunction with one another. It doesn't say if you do these, these are a safe harbor. There's no such language in this opinion. Do you have any comment on that? Hmm. Our argument is that it wouldn't violate the Commerce Clause because it doesn't prevent out-of-staters from having a local operator handle things for them here instead of being somewhere else and not paying attention to what's going on at their Airbnbs, which does happen on a regular basis. We're trying to keep people safe, trying to keep the neighborhoods safe, and at the same time provide what people want, which is a place, a different kind of experience in New Orleans that doesn't involve going to a hotel, which I understand is different. Renting a house or renting part of a house is different than staying in a hotel. Can you talk about Marfil versus the City of New Braunfels and whether the district court's opinion runs afoul of that and therefore we would need to do something different? I looked over that opinion. Is that the one that was quoted in the amicus brief? Yes, it is. It's the 70F4, 893, 5th Circuit, 2023. It's an ongoing challenge to the City of New Braunfels ban on short-term rentals, which the court remanded to the district court last year. This is the brief of the Texas Public Policy Foundation as amicus curiae in support of neither party. The brief says that there's a problem with the opinion and the Marfil case. Can you tell us? We have to follow the rule of orderliness. Is there a problem with the Marfil case? If so, is it something that's easily fixable and you can tell us how to deal with it or is there not a problem at all? I feel like there's a problem with that case and not a problem with your holding in this court's holding in the 2022. I think New Orleans is a different situation than I believe that town is a little town in Texas. Is that correct? New Braunfels is a vacation destination. People go tubing and do all kinds of hill country. It's a gateway to hill country activities. Okay, it's a country experience and New Orleans is an urban experience. It's a party place, just perhaps not as exuberant as the quarter, obviously, but it is a party place for young people as well. My response to that when I read it is that New Orleans is sui generis to most of the rest of the country with a couple of small exceptions like maybe Key West and different safeguards are necessary here to promote public safety. I think it's distinguishable. A safeguard ought to be a different criminal justice system, but let's ignore that. Would that help with the tourist situation? Yes, it would. Of course it would. I'm not sure. We've got law enforcement all over the city this week, don't we? It seems safe right now. It looks like my time is up unless the court has any other questions for me. I don't think we do. Thank you. Okay, thank you so much for your time. Okay, Ms. Rewihan. Thank you, Your Honor. I'd like to read you this passage from the first summary judgment hearing spoken by Judge Romero. If I'm a family coming to the Saints game and I want an STR, I don't want somebody invading my privacy who's not a member of my family living in there with me. That appears at ROA 3983, lines 21 to 24, and I think that's how most people feel. If there's no need for an operator residing inside of a commercial STR, why should one have to reside inside of a residential STR? There is no showing in this record that STRs, residential STRs, cause any different or more nuisances than other rentals or hotels or owner occupancy. There is no showing, nor did the district court find, that the city's nuisance ordinances are inadequate or that the city is unable to enforce them. That's an alternative, which the city... There must be no available alternative under the Commerce Clause to a discriminatory ordinance, and these are discriminatory ordinances. Well, the only discrimination that you... When I asked you what are the most important points, you said it was the owner-operator limitation. The operator limitation, yes. Operator residency. Residency, yes, Your Honor. And that doesn't... There are other ways to handle that question than invalidating the entire regime for licensing. I would have to agree with that, Your Honor, except that there are other constitutional problems with the licensing. The preference for commercial STRs. The city spoke about... The city's council spoke about divided residences. Divided residences typically have a separate address for each side, and the city's ordinances require a matching address. There's no showing why a locally available operator could not supervise a residential STR, and we suggested that. The point that the appellant suggested that. You mean a non-resident? A non... It's not just dormant... Does dormant Commerce Clause govern at the level of a person who lives in one part of New Orleans who's going to be the operator on another part, or is it mostly an interstate? What this court ruled in its first decision, Your Honor, is that ordinances that... ..prejudice, that discriminate against economic interests, they're not valid simply because they prejudice local interests as well as out-of-state interests. What we argued, the appellants argued, at... I'll find it for you. Appellants argued that a locally available operator could supervise an STR just as well as one residing inside of it without residing inside of it, and also could supervise more than one, and that goes to the ban against corporate operators. There's no reason why a corporation's employees cannot supervise more than one STR at a time, which is what the current ordinances require. If there are no more questions... The status of things now on the ground. The status with respect to the permits? Yeah. I think you might have to ask the city that, but my impression is that the city is... has issued some permits and has issued exceptions to the square limitations at the sole discretion of city council members. That's my impression. That's what the news has reported, and that's what the city council members... the city council minutes report. I think that's in our reply brief. And they are having hearings and finding people, according to my clients. Thank you. All right. Thank you, ma'am. We'll stand in recess for ten minutes.